**John SANTORO, Plaintiff,**

v.

**LEHIGH VALLEY RAILROAD COMPANY, Defendant.**

Civ. A. No. 529–55.

United States District Court
D. New Jersey.

Feb. 26, 1957.

David Roskein, Newark, N. J., by Donald J. Farage, Philadelphia, Pa., for plaintiff.

Emory, Langan, Lamb & Blake, by Charles W. Broadhurst, Jersey City, N. J., for defendant.

HARTSHORNE, District Judge.

In this suit under the Federal Employers' Liability Act, U.S.C.A. Title 45, § 51 et seq., brought by plaintiff, defendant railroad's crossing watchman, for silicosis alleged to have been suffered as a result of his employment by defendant, there was a verdict for defendant. Thereupon plaintiff moved for a new trial on the grounds: (1) that the verdict was so far against the weight of the evidence as to indicate passion, prejudice or mistake on the part of the jury, and that (2) the trial court erred in refusing one of plaintiff's requests to charge, at conference prior to delivery of the charge. However, that the charge of the Court was adequate generally, is evidenced by the fact that neither counsel took any exceptions to the charge after its delivery.

The trial lasted a week and was closely contested. Because of the various issues, the Court, with counsel's consent, the issue of contributory negligence having been withdrawn, submitted interrogatories to the jury, in lieu of a general verdict, which, with their answers, were as follows:

"1. Is plaintiff suffering from silicosis?

"Answer: Yes.

"2. Did this silicosis result in whole or in part from his employment with the Lehigh Valley Railroad?

"Answer: Yes.

"3. If, and only if, the answer to both the above questions is yes, then was the railroad, or was it not, negligent as charged?

"Answer: No.

"4. If the answer to 3 is yes, then did same result naturally and proximately in Santoro's silicosis?

"Answer:

"5. If the answer to 4 is yes, then what is the amount of your verdict?

"Answer:"

As to the first of the above grounds for the present motion, the question thus is solely whether there was evidence which would reasonably support the verdict. More specifically the question is, whether there was sufficient evidence for the jury to find that, while plaintiff had silicosis and this was due to his employment by the railroad, the railroad had yet exercised due care as to him. As to this there was ample evidence that the railroad had no reasonable ground to anticipate any danger to plaintiff from silicosis, and that consequently it had no reason to take special steps to protect Santoro, or to warn him, as to a danger which was not reasonably to be anticipated. As the Court charged, if "they could not have anticipated it, they couldn't reasonably have been expected to do anything about it". None of the several medical witnesses called by the railroad could recall ever having heard of a case of silicosis in a railroad crossing watchman. While plaintiff's medical witness claimed first that he had heard of one which he could not name, he later admitted that this, while a railroad man, was not a man at "a railroad crossing". In addition, there was ample evidence for the jury to conclude that the dust conditions were by no means as painted by plaintiff, if in fact they were noxious.

Nor did plaintiff attempt to prove that any other railroads took any of the steps to protect railroad crossing watchmen which plaintiff claimed showed defendant's lack of due care, same being the normal, though by no means all-inclusive, means of proving lack of due care. Hellweg v. Chesapeake & Potomac Tel. Co., 1940, 71 App.D.C. 346, 110 F.2d 546; Texas & Pacific Railway Co. v. Behymer, 1903, 189 U.S. 468, 23 S.Ct. 622, 47 L. Ed. 905; Beck v. Monmouth Lumber Co., E. & A. 1948, 137 N.J.L. 268, 59 A.2d 400. Of course were the railroad to have known, while it was employing plaintiff as a watchman, what it knows now, as a result of the verdict of this jury, as to this crossing watchman having suffered silicosis from his duties, then it could not claim that it could not have reasonably anticipated the danger of silicosis to its railroad crossing watchman. Under such circumstances, its failure to take the reasonably necessary steps to protect

its ignorant workmen from such danger might create a substantially different situation. But that is not this case—apparently the first case on record of silicosis caused by the duties of a railroad crossing watchman.

■ In short, there was ample evidence to show that the railroad had not failed to exercise due care as to plaintiff. While then, under plaintiff's proof, had the jury found that the railroad had been negligent, that verdict would have withstood attack, by the same token, having found otherwise, that verdict, in the light of the evidence, must stand. It was a plain question for the jury, with which this Court has no legal right to interfere.

■■ As to plaintiff's second point, he contends that the Court misled the jury, and thereby improperly affected the verdict, by refusing, during the conference with counsel over their requests to charge, and prior to delivery of the charge to the jury, to charge plaintiff's request No. 3, among plaintiff's 22 requests, as follows:

> "3. There is evidence in this case that the defendant maintains a medical department which conducted routine examinations of plaintiff only four times in the period between 1941 to 1952, when he stopped work, but that such examinations did not include fluoroscopic or x-ray examinations. If you so find, and if you further find that, in the exercise of reasonable care, in view of the type of work and the type of exposure to which plaintiff was subjected, the defendant should have caused him to have x-ray and fluoroscopic examinations, but failed to do so, you may find that the defendant was guilty of negligence. If you further find that plaintiff is disabled as a result of silicosis and that the failure to give him fluoroscopic or x-ray examinations, in whole or in part contributed to his present condition, then your verdict should be for the plaintiff."

The Court did charge the usual applicable principles of law, as evidenced by counsel's failure to take any exceptions at all at the end of the charge. The charge included, among other things, the railroad's duty to use "reasonable care to see that there was a reasonably safe place to work, and with regard to appliances, as well as acts of agents." The Court also called attention to the question as to whether "the railroad took no steps prior to the onset of the disease to protect Santoro from such danger by warning or otherwise." Thus it not only complied with most of plaintiff's requests, including an allusion to "sprinkling the ground with water in dry spells", but it also complied with the pre-trial order, which governs the issues to be tried. 3 Moore's Federal Practice, Sec. 16.11; Burton v. Weyerhaeuser Timber Co., D.C. Or.1941, 1 F.R.D. 571; Trantham v. Canal Insurance Co., D.C.Tenn.1953, 117 F.Supp. 241. The pre-trial order reads:

> "This lack of reasonable care includes defendant's (a) failure to test the conditions at the crossing as to their danger, (b) failure to properly sprinkle with water to keep down the dust, (c) failure to supply plaintiff with proper mask or other protective devices, and (d) failure to warn plaintiff of possible danger."

It will at once be noted that plaintiff's request, which the Court refused to charge—as to defendant's failure "to have x-ray and fluoroscopic examinations" of plaintiff during his employment, was not within the issues included in the pre-trial order. Plaintiff admits this, but claims, though it did not request the amendment of this order, nor even the amendment of the pleadings, that since it proved that no such examinations of plaintiff were made by the railroad during his employment, the issue requested was tried, and since it was tried, the above should have been charged, under Fed.Rules Civ.Proc. rule 15(b), 28 U.S.C.

However, this rule says "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." Here plaintiff asked the Court to charge,

not that the railroad did not make such X-ray and fluoroscopic examinations of plaintiff, but that the railroad's failure to do so proved it had not exercised reasonable care for plaintiff, a very different issue. True, some of the medical experts testified that X-rays were perhaps the best way to ascertain if silicosis existed in fact. But this issue of the existence of silicosis, a question which the jury answered "Yes", is a very different one from the issue of whether the railroad exercised due care, which the jury answered "No". None of the medical witnesses were asked, for instance, if X-rays should have been taken during the employment. There was no proof whatever that other railroads X-rayed their crossing watchmen, or indeed any other employees, during their employment. This issue simply was not tried. It was not tendered by evidence from the plaintiff. It was not answered by evidence from the defendant. For the Court to have charged it, in the absence of its trial, would have been so prejudicial to defendant as to require a reversal. The sum and substance of the situation was stated as follows to both counsel, when plaintiff made the request, before the delivery of the charge to the jury:

"Mr. Farage: If your Honor please, I am going to rest on Rule 15.

"The Court: But you see, counsel, as I recall Rule 15, it goes to a situation of amending the pleadings to accord with what was actually tried in fact, even though without the pleadings. Now defendant says, the pre-trial says, and I say that we didn't have that thing in mind.

"Mr. Farage: I really say I did have it in mind.

"The Court: We did not read your mind. This is number three. Three is out for the reason it is not within the scope of the issues."

Plaintiff's motion for a new trial will be denied, and an order may be entered accordingly.